**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**ROBERT CARRASQUILLO**,

                **Plaintiff,**

      **v.**                                  **Civil No. 1:02-CV-01231 (GLS)**

**CITY OF TROY et. al.**,

                **Defendants.**

**APPEARANCES:**                        **OF COUNSEL:**

**FOR PLAINTIFF**
**CARRASQUILLO:**

MARTIN J. KEHOE, III, ESQ.
2009 Western Avenue
Albany, NY 12203

**FOR DEFENDANTS**
**CITY OF TROY et. al.**

JOHN W. BAILEY, ESQ.
Pine West Plaza 2
Washington Avenue
Albany, NY 12205

**FOR DEFENDANTS TROY**
**HOUSING AUTHORITY et. al.**

BRENNAN, REHFUSS LAW FIRM    JOHN W. LIGUORI, ESQ.
19 Dove Street
Suite 202
Albany, NY 12210

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

### I. Introduction

Pending are two motions: plaintiff Robert Carrasquillo moves for a new trial, *see* FED. R. CIV. P. 59; and defendants the Troy Housing Authority and Rick Mason (collectively, "Troy Housing") move for attorney's fees, *see* 42 U.S.C. § 1988(b).[1]  For the following reasons, both motions are **DENIED**.

### II. Background

Carrasquillo filed a civil rights action and alleged, *inter alia*, that Troy Housing, the Troy Police Department and Police Officer Sean Kittle seriously injured him by using excessive force during his arrest.[2]  *See Am. Compl. Dkt. No. 39; see also* 42 U.S.C. §§ 1983, 1985 and 1988.

After Carrasquillo completed his direct case at trial, the court granted Troy Housing's Rule 50 motion.  See *Dkt. No.* 171 (*Minute Entry*).

---

[1]Co-defendants, the Troy Police Department, the City of Troy and Sean Kittle, take no position regarding attorneys fees. *See Dkt. No. 194.*

[2]The alleged injuries included: a scull fracture; a fractured mandible; a head abrasion; a sprained neck; facial nerve damage; a subdural hematoma; a small temporal contusion; subarachnoid hemorrhaging; broken teeth; loss of hearing in the left ear; a serious elbow injury; and peripheral 7th cranial nerve palsy on the left side.

Thereafter, the jury returned a verdict in favor of the remaining defendants. *See Dkt. No. 176*. Carrasquillo filed a timely motion for a new trial, see *Dkt. No.* 181, and Troy Housing moved for attorney's fees, see *Dkt. No. 184.*

### III.  DISCUSSION

**A.    Motion for a New Trial**

Rule 59(a)(1) of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." According to the Second Circuit, this standard permits new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 133 (2d Cir.1998) (quotation marks and citation omitted). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *Id.* "Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.  A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is egregious." *Id.* at

3

134 (internal citations and quotation marks omitted).  A trial judge's disagreement with the jury's verdict alone is insufficient reason to grant a motion for a new trial. *See Saloomey v. Jeppesen & Co.,* 707 F.2d 671, 679 (2d Cir.1983).

In support of his motion, Carrasquillo argues that the verdict was against the weight of the evidence.  *See P's Mot. for New Trial & Kehoe Aff.; Dkt. No. 181*.  He also argues that the weight of his evidence was adversely impacted by an erroneous evidentiary ruling that excluded a video tape of him taken four weeks after the incident.  *Id.*; *see also Exhibit T submitted on 8/03/04 in opposition to Def's Mot. for Summ. Judgment; Dkt. No. 71.*  The court first turns to the evidentiary ruling.

Carrasquillo argues that the authenticity of the videotape was the exclusive basis for the court's ruling.  *See* FED. R. EVID. 901.  While the court mentioned authenticity when the videotape was first offered, the record is clear that it suffered from the same exclusionary infirmities as other videotaped depositions he sought to introduce.  Thus: (1) the video was not a deposition of Carassquillo, but instead a litigation-prepared, "speaking dissertation" by his lawyer, Kehoe, regarding the merits of the case; (2) there were various, alternative means to establish the

4

foundational bases for Dr. Cohen's testimony, including several that were already in evidence or subject to admission had they been offered; and (3) the prejudicial effect of Kehoe's unsworn, video testimony substantially outweighed any probative value. In other words, the video suffered from the identical defects recited by the court when it denied Carrasquillo's offer regarding other videotaped interviews of several witnesses.

Likewise, the court is not persuaded that the jury's verdict is either egregious or constitutes a miscarriage of justice. There is no doubt that Carrasquillo suffered serious injuries resulting from some degree of force employed by Kittle or someone else at the time of arrest. There is also no doubt that Carrasquillo fled when arrested, and some degree of force was justified to terminate his flight. Precisely who employed the force, the extent of the force, and whether the force was excessive, were all factual issues squarely presented to the jury, and resolved by them. Despite Carrasquillo's argument that his use of force expert, Steven Ashley, was entitled to make the ultimate excessive force judgment, he is wrong. *See Kehoe Aff. at ¶ 3; Dkt. No. 181*. That decision belonged to the jury.

**B.    Attorney's Fees**

Troy Housing seeks attorneys fees, citing 42 U.S.C. § 1988, 28

5

U.S.C. § 1927, and Rules 11 and 54 of the Federal Rules of Civil Procedure.

**1.      42 U.S.C. § 1988**

In a § 1983 action, a court has discretion to award reasonable attorney's fees as part of costs to the prevailing party.  *See* 42 U.S.C. § 1988(b) (2000).  "Concerned about the potential chilling effect on section 1983 plaintiffs-who are ' "the chosen instrument of Congress to vindicate" a policy of the highest national priority' [the Second Circuit has been] hesitant to award attorney's fees to victorious defendants in section 1983 actions."  *Rounseville v. Zahl,* 13 F.3d 625, 632 (2d Cir. 1994).  "A court should award defendants attorney's fees under section 1988 only if 'the plaintiff's claim was 'frivolous, unreasonable, or groundless, or... the plaintiff continued to litigate after it clearly became so.' " *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986) (quoting *Hughes v. Rowe,* 449 U.S. 5, 15 (1980) (internal quotation marks omitted)).  While a showing that the plaintiff acted in bad faith will support a section 1988 award, the determination generally turns on whether the claim itself is clearly meritless.  *Rounseville*, 13 F.3d at 632 (citation omitted).

Troy Housing contends that Carrasquillo "had no independent basis

6

much less credible evidence upon which to base [his] claim against [them]." *See Def.'s Br. P. 1; Dkt. No. 184*. It also contends that the claims were meritless since Carrasquillo only relied on one witness, Joseph Becker. *Id.* at 4. While the court has some empathy for Troy Housing's position, it cannot draw the conclusion it seeks.

There is little question that Carasquillo's pre-suit investigation appears to have started first with conclusions, and facts thereafter. Nonetheless, Carrasquillo himself was of little utility to the investigation because his serious injuries hindered his memory. Also, it is arguable that there was considerable witness confusion caused by the fact that so many police officers in the area and on the scene were employed by both the Troy Police Department and the Housing Authority. While a trained investigator might well have started with accurate fact-gathering, not conclusions, the record reflects that some witnesses implicated Troy Housing nonetheless.

While Becker may have changed his testimony at trial, there were others who did not testify, but who implicated Troy Housing in pretrial statements. As is demonstrated by the court's evidentiary rulings during trial, the court has a jaundiced view of Mr. Kehoe's penchant for

7

substituting his testimony for that of the witnesses during his supposed "depositions." Nonetheless, it would be unfair to definitively conclude that there was no basis to file claims against Troy Housing even though those claims found no evidentiary support at trial. Accordingly, Carrasquillo's claims were not 'frivolous, unreasonable, or groundless' and this court declines to grant the defendants' motion for attorney's fees under 42 U.S.C. § 1988 and Rule 54.

**2.    28 U.S.C. § 1927**

"Unlike § 1988, which shifts attorneys' fees from one party to another, § 1927, entitled 'Counsel's liability for excessive costs,' imposes liability for misconduct on 'any attorney or other person admitted to conduct cases in any court.'"[3]  *Oliveri*, 803 F.2d at 1273 (quoting 28 U.S.C. § 1927) (1980). "[This] section provides that any such person 'who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Oliveri*, 803 F.2d at 1273 (quoting 28 U.S.C. § 1927). "The sanctions authorized under section

---

[3]"Section 1927 also differs from § 1988 in that it applies a uniform standard for the imposition of sanctions, whether the person against whom fees are assessed represented the plaintiff or the defendant." *Oilveri*, 803 F.2d at 1273.

8

1927 are not to be lightly imposed; nor are they to be triggered because a lawyer vigorously and zealously pressed his client's interests." *Colucci v. New York Times Co.*, 533 F. Supp. 1011, 1013-1014 (S.D.N.Y. 1982). "The power to assess the fees against an attorney should be exercised with restraint lest the prospect thereof chill the ardor of proper and forceful advocacy on behalf of his client." *Id*.

As such, "the imposition of a sanction under § 1927 requires a clear showing of bad faith." *Oliveri*, 803 F.2d at 1273 (citations and internal quotation marks omitted). "Like an award made pursuant to the court's inherent power,[4] an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri*, 803 F.2d at 1273 (citation omitted). Such bad faith must be established by both "clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes." *Dow Chemical Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986) (internal quotation marks and

---

[4] Under the inherent power of the court to supervise and control its own proceedings, the court can award attorney's fees to the prevailing party against the losing party or his attorney when they have acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Oliveri*, 803 F.2d at 1273.

9

citations omitted) (alteration in original). "Whether a claim is colorable,... is a matter of 'whether a reasonable attorney could have concluded that facts supporting the claim *might be established,* not whether such facts actually *had been established.*'" *Id.* (quoting *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980) (emphasis in original))

In this case, Troy Housing does not provide the court with clear evidence of bad faith by Kehoe sufficient to justify an award of attorney's fees under 28 U.S.C. § 1927. Instead, the defendants recite the same arguments already addressed by the court. *See Def.'s p. 4, Dkt. No. 184.* Although Kehoe may have miscalculated the strength of the case, his oversight is not the equivalent of bad faith. Accordingly, the defendants' motion for attorney's fees under 28 U.S.C. § 1927 is denied.

### 3. Rule 11 Sanctions

"Apart from the statutory provisions allowing for the shifting of litigation costs, a federal court may award attorneys' fees pursuant to its inherent equitable powers, or pursuant to the dictates of Fed. R. Civ. P. 11." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.

1985). Rule 11[5] requires an attorney to "read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument...." *Eastway*, 762 F.2d at 253. The failure to comply with Rule 11 "shall impose upon the person who signed it..., to pay to the other party or parties the amount of the reasonable expenses..., including a reasonable attorney's fee." *Id.* at 253. The plain language of Rule 11 focuses on the attorney's conduct at the time a pleading... is signed. *Oliveri*, 803 F.2d at 1274. In imposing sanctions, "the court is to avoid hindsight and resolve all doubts in favor of the signer*.*" *Oliveri*, 803 F.2d at 1275. As such, Rule 11 is violated only when it is "patently clear that a claim has absolutely no chance of success." *Eastway*, 762 F.2d at 254. For the reasons already discussed, Kehoe did not violate Rule 11, and the request for sanctions is denied.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Carrasquillo's motion for a new trial pursuant to Rule

---

[5]Fed. R. Civ. P. 11. also requires that "[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed" by the attorney.

11

59 is **DENIED** (*Dkt. No.* 181); it is further

**ORDERED** that Troy Housing defendants motion for attorney's fees is **DENIED** (*Dkt. No.* 184); and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order upon the parties.

February 8, 2006
Albany, New York

_____
Gary L. Sharpe
U.S. District Judge

12